UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FRANK R. FERRARELLI, | : | Case No. 1:07cv685 |
| Plaintiff, | : | (Judge Barrett) |
| v. | : | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION |
| FEDERATED FINANCIAL, | : | FOR SUMMARY JUDGMENT (Doc. 39) (Declaration of Frank |
| Defendant. | : | Ferrarelli Attached) |

## INTRODUCTION

Defendant, Federated Financial Corporation of America (hereafter "Federated"), has moved for summary judgment on the following grounds:

    A.  There is no private right of action under the Fair Credit Reporting Act ("FCRA") for failing to conduct a reasonable investigation. (Doc. 39, Federated Memo. at 12-13)

    B.  Federated fulfilled its duty under 15 U.S.C. § 1681s-2(b) because its investigation was reasonable under the circumstances as a matter of law. (*Id.* at 13-15)

    C.  As a matter of law, Federated did not act in conscious disregard of the law and therefore cannot be liable for statutory or punitive damages. (*Id*. at 15)

    D.  As a matter of law, Federated's conduct was not the legal cause of Mr. Ferrarelli's damages. (*Id*. at 16-20)[1]

Mr. Ferrarelli will respond in the same order.

---

[1] Mr. Ferrarelli withdraws his claims under the Fair Debt Collection Practices Act and for Federated's conduct which took place in December of 2007. He will therefore not respond to Federated's arguments on those points. (Doc. 39, Federated Memo. at 11-12, 20)

C:\Current\Ferrarelli vs. Federated Financial\Pl's MSJ\Memo in Opposition to Summary Judgment.doc
12/12/2008

**FACTS**

In late 2005 and early 2006, Mr. Ferrarelli first became suspicious that he had become the victim of identity theft[2] when he began to receive telephone calls from various debt collectors. (Doc. 39-30, Ferrarelli Depo. at 54; Doc. 53, Ferrarelli Decl., ¶ 1). He soon observed a number of accounts on his credit reports which he did not recognize. On October 2, 2006, Mr. Ferrarelli filed a report with the Hamilton County Sheriff (Doc. 39-30, Ferrarelli Depo. at 83-84; Doc. 53, Ferrarelli Decl., ¶ 6 and Doc. 39-2, Flees Declaration, Exh. "W"). On January 2, 2007, Mr. Ferrarelli requested each of the three major credit reporting agencies to place an extended fraud alert on his credit reports. (Doc. 53, Ferrarelli Decl., ¶ 3).

Only in mid-April of 2007 did Mr. Ferrarelli become aware that the identity thief had taken out an Advanta credit card in Mr. Ferrarelli's name. By this time the account was in default and had already been purchased by Federated, a company which buys up delinquent debt in large quantities at a steep discount. (Doc. 39-33, Flees Depo. at 12; Doc. 35, Answer to Amended Complaint, ¶ 6 and Doc. 39-2, Flees Declaration, Exh. B).

Mr. Ferrarelli then observed that Federated was reporting the Account as delinquent, both on his TransUnion ("TU") credit report of April 13, 2007, and on his Experian Credit Solutions ("Experian") report of April 18, 2007 (Doc. 35, Answer to Amended Complaint, ¶ 7; Doc. 53, Ferrarelli Decl., ¶¶ 4-5). The notations on those reports indicated Federated was reporting the Account as "past due" and/or "in collection." (Doc. 39-33, Flees Depo. at 73; Doc. 53, Ferrarelli Decl., ¶5 and Exhs. L & M).

---

[2] Identity theft is a crime in which the perpetrator impersonates an individual in order to obtain goods and services in the name of that individual and cause the supplier to look to that individual for payment.

On April 30, 2007, Mr. Ferrarelli sent a dispute letter to TU enclosing, among other things, an FTC Fraud Affidavit and a Police Report.  He copied Federated with this letter and with the exhibits (Doc. 35, Answer to Amended Complaint, ¶ 7; Doc.53, Ferrarelli Decl., ¶ 6 and Exhibit B). Federated received it on May 3, 2007 (Doc. 53, Ferrarelli Decl., ¶ 6 & Exh. C).  On May 4, 2007, <u>the very next day</u>, Federated wrote Mr. Ferrarelli:  "We have researched business records and the address the monthly statements were sent to and have discovered you were involved with both. Your account will be forwarded to our legal counsel in Ohio on May 30, 2007"  (Doc. 35, Answer to Amended Complaint, ¶ 10; Doc. 53, Ferrarelli Decl., ¶ 7 and Doc. 39-2, Flees Declaration, Exh.J).

On May 22, 2007, Mr. Ferrarelli sent a similar dispute letter to Experian concerning the fraudulent Account (Doc. 35, Answer to Amended Complaint, ¶ 9; Doc. 53, Ferrarelli Decl., ¶ 8 and Exh. D).  It is not clear from the record what investigation if any Federated ever conducted with regard to this dispute.  However, Experian continued to list the account adversely on credit reports dated November 21, 2007, and December 6, 2007.  (*Id*.)

Based on Federated's verification of Mr. Ferrarelli's account, TU reported back to Mr. Ferrarelli on June 4, 2007, informing him it would continue report the Account as "in collection."  Experian also continued to report the account in a derogatory fashion based on information received from Federated.  These reports were dated June 5, 2007 and September 19, 2007 (Doc. 53, Ferrarelli Decl., ¶¶ 9-10 and Exhs. E-G).

Having failed to eliminate these derogatory references to the fraudulent Account through the statutory means described above, Mr. Ferrarelli tried again.  On November 9, 2007, he sent another statutory dispute letter to Experian.  (*Id*., ¶ 11 and Exhs. I and J).

3

As noted above, Experian continued to list the account adversely on reports dated November 21, 2007, and December 6, 2007. (*Id.*)[3]

The derogatory Account information finally disappeared from Mr. Ferrarelli's Experian Report in April of 2008. (*Id.*, ¶ 12 and Exh. J). In the end, Federated's adverse reports of the Account appeared on at least one of Mr. Ferrarelli's credit reports from April 2007 through April 2008.

The State of Ohio indicted Jeffrey Jones for violations of Ohio Rev. Code §§ 2913.49(B)(2) (identity fraud), 2913.31(A)(1) (forgery), and 2913.02(A)(3) (theft), 12 felony counts in all, on January 31, 2008. See Hamilton County Case No. B 0800592. He is currently awaiting trial.

## ARGUMENT

A.  THE FCRA PROVIDES A PRIVATE RIGHT OF ACTION AGAINST A FURNISHER FOR VIOLATION OF 15 U.S.C. § 1681s-2(b).[4]

In *Sweitzer v. American Express Centurion Bank*, 554 F.Supp.2d 788 (S.D. Ohio 2008), Judge Smith summarized the law on this point as follows:

> The majority consensus among the courts that have addressed the issue is that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher. *See generally Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 783-784, 783 n. 4 (W.D. Ky. 2003). The Sixth Circuit stated, albeit in an unpublished opinion, that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher. *Bach v. First Union Nat. Bank,* 149 Fed. Appx. 354, 359-360 (6th Cir.2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for . . . violation of 15 U.S.C. § 1681s-2(b)(A)-(D).") (citing *Stafford,* 262 F.Supp.2d at 782-783). Thus, the Court is not convinced that it

---

[3] At some point TU removed the negative reference.

[4] Federated concedes that Mr. Ferrarelli is a consumer as defined in the FCRA. (Doc. 35, Answer to Amended Complaint, ¶ 2) Federated further concedes that it is a furnisher of consumer information to credit reporting agencies and therefore is subject to the requirements of the Act pursuant to 15 U.S.C. § 1681s-2b (*Id.*, ¶ 3; Doc. 39, Federated Memo. at 12)

4

>should follow the Northern District of Ohio, which adopted the minority position. See *Zamos II v. Asset Acceptance, LLC,* 423 F.Supp.2d 777, 787-788 (N.D. Ohio 2006) (following the minority position).

*Id*. at 794. Judge Smith thus rejected *Zamos*, *supra*, a *pro se* case from the Northern District of Ohio. This Court should follow the Sixth Circuit precedent even though unreported, as well as Judge Smith's decision in *Sweitzer*, and reject Federated's position.

B. THE REASONABLENESS OF FEDERATED'S INVESTIGATION IS FOR THE TRIER OF FACT.

Federated's memorandum concedes that as a furnisher of information under the FCRA it was required by § 1681s-2(b) to perform a reasonable investigation upon receiving notice that Mr. Ferrarelli was disputing the information it had supplied to credit reporting agencies. (Doc. 39 at 13-14) It asks for summary judgment on this point but does not discuss the standard for granting its motion.

The case law, however, is clear with respect to summary judgment on a furnisher's s-2(b) duty: "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper *if the reasonableness of the defendant's procedures is beyond question*." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (emphasis added); accord in this Circuit, *Alarcon v. Transunion Marketing Solutions*, Inc., 2008 WL 4449387, at *5 (N.D. Ohio; Dowd, J.) (whether furnisher's failure to obtain tracking number or run credit profile was reasonable was for the jury); *Miller v. Wells Fargo & Co.*, 2008 WL 793676 (W.D. Ky.), at *5 (reasonableness of disputed re-reporting of an account as being in

bankruptcy was for the jury).[5] As Mr. Ferrarelli will now show, Federated cannot meet the "beyond question" standard on this record.

Federated employs only one individual to investigate § s-2(b) consumer disputes – Ted Sobieski (Doc. 52, Sobieski Depo. 18). Mr. Sobieski spends between 8 and 10 hours per week investigating consumer disputes, and responds to between 120 and150 such disputes per month. (*Id*. at 15-16, 49).

Whenever a consumer disputes an account with a credit reporting agency (such as TU or Experian), that agency will electronically transmit the dispute to the credit furnisher (such as Federated) through a computer terminal using a standard industry-wide procedure known as E-Oscar (*Id*. at 15, 17, 19, 21). In order to receive these disputes all the investigator has to do is turn on this computer (*Id*. at 19-20). If the furnisher's investigator verifies the account, the credit reporting agency will continue to report it as before. If the investigator cannot verify the account, or fails to respond at all, the agency must cease reporting as mandated by 15 U.S.C. § 1681i(a)(5).

TU transmitted Mr. Ferrarelli's first Account dispute to Federated on May 12, 2007, for account verification. For this purpose TU used a form known as an "ACDV," or "Automated Consumer Dispute Verification." (*Id*. at 23, 25; the printed forms are Sobieski Depo. Exhs. C & D and Doc. 39-2, Flees Declaration, Exhibit "P"). A furnisher receiving such a form must check boxes for each item which is identical to its own records or provide the differing information where applicable (*Id*. at 27-29, 33-34).

---

[5] Federated attempts to set a summary judgment standard by citing a Missouri district court case involving the comparison of "the cost of verifying the accuracy of the item versus the possible harm of reporting inaccurate information." (Memo. at 14) It does not, however, mention any record evidence concerning this cost and this harm. It also cites an unreported district court case from the Southern District of New York regarding "prevailing industry standards." It does not state what those standards are.

6

Mr. Sobieski was unable to match Mr. Ferrarelli's address as reported by TU, and, therefore, was unable to place a check mark in the appropriate box. Instead, Mr. Sobieski inserted a different address onto the form[6] (*Id*. at 29). He was also unable to match Mr. Ferrarelli's date of birth and telephone number (*Id*. at 30-31). *He, nevertheless, verified the Account as belonging to Mr. Ferrarelli.*

The identical process took place again on May 26, 2007 with the same result – *Mr. Sobieski completed and signed the mismatching form, thereby verifying to TU that the Account belonged to Mr. Ferrarelli* (*Id*. at 33, 35-36, 43 and Depo. Exh. "D").

According to Mr. Sobieski the entire verification process took "a couple of minutes" because that is the average length of time he takes on such investigations. (*Id*. at 37, 39)[7] The investigation process was conducted solely by Mr. Sobieski; no one assisted him (*Id*. at 58).

Moreover, while Mr. Ferrarelli submitted a number of documents with each dispute, such as the FTC Fraud Affidavit and the Police Report, Mr. Sobieski did not refer to any documents other than one page of account notes (*Id*. at 44). He stated that he never contacts a consumer and that he did not contact Mr. Ferrarelli (*Id*. at 45). Thus, the entire verification process was based upon an investigation taking a couple of minutes; the investigator ignored the mismatched information in his computer; he ignored the documentation showing identity theft; and he nevertheless verified to the credit reporting agency that Mr. Ferrarelli was the owner of the Account.

---

[6] It appears that the address Federated had was the one the identity thief used to open the account, in order to insure that he and not Mr. Ferrarelli would receive the account statements. (See Doc. 53, Ferrarelli Declaration, ¶ 7).

[7] He later said "between two and seven minutes." (*Id*. at 45) When asked what percentage of disputes result in a suppression of the account through non-verification, Mr. Sobieski responded that the figure was only two per cent. (*Id*. at 52-53).

In addition to this two-minute verification, Federated also responded to the copy of Mr. Ferrarelli's dispute letter to TU, which it received on May 3, 2007. This response was not a verification to TU – that is done electronically through the form described above. Instead, Federated wrote Mr. Ferrarelli himself on May 4, 2007: "We have researched business records and the address the monthly statements were sent to and have discovered you were involved with both. Your account will be forwarded to our legal counsel in Ohio on May 30, 2007." (Doc. 35, Answer to Amended Complaint, ¶ 10; Ferrarelli Decl., ¶ 7 and Doc. 39-2, Flees Declaration, Exh. "J"). This letter thus appears to constitute a parallel investigation of some sort, although Federated has never described the "research" mentioned in the letter. What is perfectly clear, however, is that whatever Federated employee wrote the letter made his or her decision – that Mr. Ferrarelli was not the victim of identity theft – within 24 hours.

As noted above, in order to prevail on its motion Federated must demonstrate that its investigation was reasonable "beyond question." However, Federated's memorandum does not attempt to clarify Mr. Sobieski's testimony, contradict it, or interpret it in any way. *In fact, it doesn't even mention the Sobieski investigation.* And it has thus far provided no sworn evidence attesting to the reasonableness of Sobieski's investigatory procedures.

In the same manner, Federated's memorandum does not mention the investigation behind its May 4, 2007, letter informing Mr. Ferrarelli that it had determined the Account was his. Instead its memorandum refers to a *different* investigation it apparently undertook on a volunteer basis, one which had nothing to do with the ACDV it received from any credit reporting agency.

8

The person who claims to have conducted this third investigation, Patrick David, was asked at deposition, "Did you create any document, or formal report?" He admitted that he had not. (Doc. 39-34, David Depo. at 61). He also admitted that "I personally have not reached a conclusion as to what happened" (*Id*. at 117). He conceded that he had not concluded his investigation since "it was kind of interrupted when we got sued I think" (*Id*. at 47).

Despite these admissions, Federated now tells this Court it is entitled to summary judgment based upon its expert's belief that "Federated's investigation was reasonable as compared with industry standards"[8] (*Id*. at 14-15). Its expert does not mention Mr. Sobieski's two-minute verification of the Account, or whether verifying an account based upon mismatched data conforms with "industry standards." She does not mention the one-day decision expressed in Federated's May 4 letter. Instead she speaks only of this third parallel investigation, admittedly never concluded, which generated no report and which never reached any credit reporting agency.

It is inconceivable on this record that Federated conducted an investigation which was reasonable "beyond question." In fact, any reasonable investigator, seeing the discrepancies in address, date of birth and telephone number between the data supplied

---

[8] Mr. Ferrarelli's expert fraud investigator, Jim Whitaker, expressed the following opinion concerning Federated's parallel investigation by Patrick David:

> Federated's investigation was not conducted in good faith, and in fact, the investigator was predisposed from the outset to prove his assumption that this "was a business relationship that had gone bad rather than identity theft". The investigator's focus should have been concentrated on gathering and analyzing facts and data in order to arrive at a logical and reasonable conclusion. Instead, he was intent on attempting to interpret the data to reinforce the conclusion that he had already arrived at – this was a business relationship gone bad.

(Doc. 46-3, Federated Motion in Limine, Whitaker Report, p. 5).

9

by the credit reporting agency and the data in the investigator's own file, had to either refuse to verify or investigate further before deciding that Mr. Ferrarelli was the owner of the account. Federated's procedure was simply to verify the account and pursue Mr. Ferrarelli for the balance due regardless of the facts on the screen and in the proof accompanying his dispute letter.[9] Federated's conduct demonstrated a perverse disregard for reason, rather than reasonableness beyond question. No juror would find it reasonable and this Court should not so find either.

C.  FEDERATED'S WILLFULNESS IS FOR THE TRIER OF FACT.

The FCRA allows a consumer to obtain punitive damages against "any person who willfully fails to comply with any requirement imposed under this subchapter." 15 U.S.C. § 1681n(a)(1)(B)(2). This is ordinarily a jury question. See *Holmes v. Telecheck Intern., Inc.*, 556 F.Supp.2d 819, 847 (M.D. Tenn. 2008) (collecting authorities):

> Willfulness under the FCRA is generally a question of fact for the jury. *See Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991); *Lenox v. Equifax Info. Servs. LLC,* 2007 WL 1406914, *6 (D.Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Centuouri v. Experian Info. Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D. Ariz.2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures). To determine that willfulness does not present a jury question in this case, the Court would have to conclude that no reasonable jury could find that TeleCheck's conduct. created a "risk [of FCRA violation] substantially greater than that which is necessary to make [its] conduct negligent." *See Safeco* [*Ins. Co. of America v. Burr*]*,* 127 S.Ct. 2201, 2215 (2007). This the Court cannot do based upon the record currently before it.

---

[9] The reason for this conduct is not hard to discern – a debt collector is far more likely to recover funds from the victim than from the thief, who is either on the run or headed for prison.

10

Thus, in order to accept Federated's position and take the issue of willfulness out of the hands of the jury this Court would have to conclude that no reasonable juror could find that Federated's investigation of Mr. Ferrarelli's identify theft claim created a risk of an FCRA violation substantially greater than that which is necessary to make its conduct negligent. Such a conclusion is not possible on this record.

Federated's entire position on willfulness is contained in a six-line paragraph with no citations – it simply states that it conducted "a thorough review of the circumstances surrounding this Urban Opportunities account, and Plaintiff's tie to the business." (Doc. 39, Federated Memo. at 15) It also states that Mr. Ferrarelli disrupted its investigation by filing a lawsuit. (*Id.*) It concludes that its "actions do not constitute a willful violation of the Act." (*Id.*)

The brevity of this argument indicates Federated would like this Court to search the record to further back up its position. Sixth Circuit case law prohibits summary judgment in these circumstances. See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

Moreover, Federated's argument fails even to mention, let alone explain away, its investigator's two-minute verification of the Account despite the data discrepancies, and its one-day decision letter of May 4, 2007, stating that "your account will be forwarded to our legal counsel in Ohio."

In sum, Mr. Ferrarelli has presented evidence showing that Federated did absolutely nothing to determine the truth of the identity theft claim before it, even though he had presented it with ample documentary backup for the truth – that he was the victim

11

of identity theft. In these circumstances a jury could easily find willfulness. The Court should therefore reject Federated's summary judgment position on this point.

D. WHETHER FEDERATED CAUSED MR. FERRARELLI'S NON-ECONOMIC DAMAGES IS ALSO A MATTER FOR THE TRIER OF FACT.

Judge Beckwith recently set forth the applicable law concerning non-economic damages in the circumstances which prevail here:

> The Court specifically noted *Bach v. First Union National Bank,* 149 Fed. Appx. 354, 2005 U.S.App. LEXIS 18197 (6th Cir., August 22, 2005), a Fair Credit Reporting Act case where the Sixth Circuit affirmed a substantial damages verdict for pain, suffering and humiliation, holding that *"An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements."* *Id.* at 361.

*Lee v. Javitch, Block & Rathbone, LLP*, 2008 WL 1886178 (S.D. Ohio), at *2. Thus, Mr. Ferrarelli could obtain non-economic damages merely by presenting his own testimony at trial (or in an affidavit for the purpose of defeating summary judgment). *A fortiori*, summary judgment is inappropriate when he has presented the extensive damage and causation testimony contained in the report of his expert witness, Dr. Paul A. Deardorff.

Dr. Deardorff examined Mr. Ferrarelli at length and concluded:

> Mr. Frank Ferrarelli was evaluated to determine the impact of an identity theft incident and the subsequent refusal of a credit agency to clear his credit on his emotional and behavioral functioning. He explained that a business partner fraudulently used his identity to secure loans. When he discovered the theft of his identity, he and his lawyer found five different accounts but noted that three of the creditors acknowledged that he owed them nothing. Two reportedly refused to do so and he is currently engaged in litigation with one of those agencies.
> While he acknowledged that the identity theft itself was stressful, he described the actions of the creditor as "adding insult to injury." He alleges considerable emotional distress due to the incident in question and further reports that his behavior was profoundly affected for a significant period of

12

time. He stated that he was preoccupied with his credit situation, frequently vomited while showering, could not sleep, and was far less productive at home. His relationship with friends and family suffered. He noted that his situation was particularly stressful because he was unable to obtain a loan to add an addition onto his home to care for his elderly mother who subsequently died before he could obtain credit.

He described an uneventful upbringing, although he noted that he was raised by a single mother. He is a high school graduate who described a long and productive work history. He has been married for 22 years and maintains a good relationship with his wife and son. Prior to the incident in question, he described himself as emotionally healthy and described an adequate activity level. As the stress of the situation continued, his emotional functioning and activity level were profoundly impacted. Clinically, his grooming and hygiene was adequate.

He displayed no psychotic symptomatology but appeared to be anxious and depressed. His memory, attention, and concentration skills appear to be consistent with his overall level of intellectual functioning but he noted that his attention and concentration skills suffered considerably during the stressful period of time. He appears to be of bright average intelligence. Collateral contacts indicate significant distress as the result of the identity theft and the apparent refusal of the credit agency to clear his name.

Personality test results are valid and suggestive of significant emotional distress and behavioral disruption as a result of the stressor in question. While the behavior of Mr. Jones clearly impacted Mr. Ferrarelli, he was able to rather easily resolve the situation with three creditors. His difficulty in doing so with the final two creditors has clearly resulted in substantial emotional difficulty and behavioral disruption.

While the agency in question did not steal Mr. Ferrarelli's identity, if they had knowledge that he was a victim of identity theft or refused to consider documentation suggesting that he was a victim of identity theft, then the agency must be viewed as attempting to profit from that crime. If so, they contribute to the collateral damage suffered by Mr. Ferrarelli as a result of the original identity theft. As has been reported by the Ohio Department of Justice, identity theft victims are "repeatedly victimized" by such actions which results in "serious disruption and emotional damage." Similarly, when the United States Court of Appeals for the Fourth Circuit argued that an identity theft victim suffered "mounting frustration and distress" for "almost two years" and referred to "mental anguish, humiliation, and emotional distress," they allude to not just the identity theft but the enormous burden of attempting to rectify the situation. That burden is only magnified by less than consumer-oriented credit agencies. Clearly, the actions of Mr. Jones impacted Mr. Ferrarelli. Identity theft is stressful and can produce emotional stress. Nonetheless, on learning of the identity theft, Mr. Ferrarelli took appropriate actions to clear his name. He believes that his inability to do so has resulted in significant emotional distress. As he indicated, he worries that when the

13

> phone rings that it might be a creditor. He worries as to "what am I going to do" if unable to resolve his credit situation. His worry does not involve Mr. Jones. He is angry with him, but thoughts of Mr. Jones do not result in fear, anxiety, or worry. Similarly, the death of his mother was difficult for him. Nonetheless, she was 87 years old and her death was neither unexpected nor an unusual life occurrence. Her death has been troubling for him, however, due to his inability to adequately care for her during the time of her illness and subsequent death. He clearly attributes his ability to do so to his poor credit rating. Again, it was only in January of 2008 that he was prescribed medication.
>
> In short, he weathered the stress of Mr. Jones identity theft, his mother's death, and his difficulty with creditors for a number of years before he finally sought medication to alleviate his significant emotional distress because he was unable to resolve his credit issues with the remaining two agencies. It is this examiner's conclusion with a reasonable degree of psychological certainty that the actions of the agency in question resulted in Mr. Ferrarelli suffering substantial emotional impairment for a significant amount of time. In fact, he remains distressed to this day.

(Doc. 53, Ferrarelli Decl., ¶ 13 and Exhibit "N", pp. 12-13).

Dr. Deardorff's conclusion is clear: "[T]he actions of the agency in question *resulted in Mr. Ferrarelli suffering substantial emotional impairment for a significant amount of time*. In fact, he remains distressed to this day." Dr. Deardorff backs up his conclusion with considerable factual and professional material. Counsel for Mr. Ferrarelli has been unable to find a single authority permitting summary judgment on causation grounds against a plaintiff who put forward independent medical evidence of causation and damage.

Federated provides no such authority either. Instead it argues that Mr. Ferrarelli's "entire claim for emotional distress is his assertion that he was unable to receive financing for purposes of remodeling his home for his ailing mother." (Doc. 39, Memo. at 17). This is incorrect. As Dr. Deardorff points out, Mr. Ferrarelli's non-economic damage claim is based in great part upon Federated's wrongful assertions to credit reporting agencies, for a full year, that caused him the type of distress and feelings of

14

helplessness set forth in the report, irrespective of his inability to obtain a loan. Federated's dissertation on Mr. Ferrarelli's credit history (Memo. at 17-18) is therefore immaterial.[10]

As to stress from other sources (*id*. at 19), this merely goes to the weight of the evidence – it cannot be a ground for preventing Mr. Ferrarelli from presenting his damages to the jury. Federated has presented no authority for a contrary view.

Finally, Federated argues that Mr. Ferrarelli cannot distinguish between the damages Federated caused him and damages caused to him by other defendants in suits related to the ID theft by Jeffrey Jones. (*Id*. at 18-20) Again, it presents no authority for this position. And applicable case law rejects the admissibility of settlements in other cases. See *Jackson v. Shell Oil Co.,* 401 F.2d 639, 643 (6th Cir.1968); *Vidosh v. Holsapple*, 1987 WL 273164 (E.D. Mich. 1987), at *13.

The jury is perfectly capable of examining the relevant time frame, weighing Federated's conduct against he applicable FCRA standards, and making a decision on causation and damages. The Court should reject Federated's position.

---

[10] For the same reason, *Murphy v. Midland Credit Management, Inc.*, 446 F.Supp.2d 1082, 1092 (E.D. Mo. 2006), has no bearing on the matter. (Federated Memo. 18-19)

**CONCLUSION**

For the foregoing reason, the Court should deny Federated's Motion for Summary Judgment.[11]

                    Respectfully submitted,

/s/ *Stephen R. Felson*
Stephen R. Felson  (0038432)
215 E. Ninth St., Suite 650
Cincinnati, Ohio  45202
(513) 721-4900
(513) 639-7011 (fax)
SteveF8953@aol.com


/s/ *Steven C. Shane*
Steven C. Shane
321 Fairfield Avenue
P.O. Box 73067
Bellevue, KY  41073
(859) 431-7800
(859) 431-3100 (fax)
shanelaw@fuse.net
Counsel for Plaintiff

---

[11] The recent amendment to Rule 56 has eliminated the old requirement about reasonable minds coming to but one conclusion; Federated's formulation in its motion (p. 1) is therefore obsolete. Moreover, the new rule strongly encourages the trial court to "determine what material facts are not genuinely at issue . . . by examining the pleadings and evidence before it and by interrogating the attorneys.  It should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue.  The facts so specified must be treated as established in the action."  Rule 56(d)(1).

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 12, 2008, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties by certified mail who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

              /s/ *Steven C. Shane*